Judgment has been entered upon such findings, and the defendants appeal therefrom and from the order granting an additional allowance to the plaintiff.

There is no merit in either appeal. The testimony was abundant to establish the claim of the plaintiff, and left no excuse for the defense of the action.

As we fully concur in the opinion rendered by the judge at the special term, it is neither profitable nor necessary to make a lengthy examination or statement of the case here.

The judgment and order appealed from should be affirmed, with costs.

PRATT, J., concurs; BARNARD, P. J., not sitting.

---

ELIZABETH GREENLEAF *et al.*, Respondents, *v.* THE BROOKLYN, FLATBUSH & CONEY ISLAND RAILROAD COMPANY *et al.*, Appellants.

*Supreme Court, Second Department, General Term, December 9, 1889.*

*Ejectment. Title.*—A paper title, based upon a judgment of partition in the old court of chancery, even without extraneous proof that the premises were ever in the possession of the parties to such suit, or of any person through whom the title is deduced, is sufficient to enable a party to maintain ejectment.

Appeal from circuit court, Kings county.

Ejectment by Elizabeth Greenleaf and another against the Brooklyn, Flatbush & Coney Island Railway Company and another. From a judgment in plaintiffs' favor defendants appeal. For former report see 37 Hun, 435.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Wm. C. De Witt,* for appellants.

*Dixon, Williams & Ashley* (*Mornay Williams* and *Frederic A. Ward,* of counsel), for respondents.

DYKMAN, J.—This case has been before us on two former occasions, when we gave it careful consideration, and reached a conclusion in favor of the plaintiff. Upon the former appeals the evidence on the part of the plaintiff only was before us, but upon the trial, which resulted in the judgment from which the present appeal is taken, the evidence of the defendant was also introduced, but it discloses no claim of right or title to the premises in question on the part of the defendant. Neither is there any controversy respecting the title of the plaintiff to the premises, but only of their location; and the trial judge has said in his opinion: "Whatever may have been the case heretofore, I think the evidence taken on this last trial is sufficiently definite to fix the locality of the lot which was conveyed to the plaintiff's predecessors by the commissioners in partition." The findings of the trial judge are also full and explicit in relation to the identity of the lot, and the possession of the same by the defendants. A full and careful examination of the case for the third time confirms our former views, and we have no doubt the results reached on this last trial are in accordance with the dictates of law and justice, and the judgment should be affirmed, with costs.

PRATT, J. (dissenting).—Without stopping to discuss or criticise the unreliable character of the testimony by which this judgment is sought to be sustained, the findings of the trial judge upon the undisputed proofs offered by defendant seem enough to settle the dispute. The judge has found in

his tenth and eleventh findings of fact that the lines and location of plaintiff's lot are contrary to all the locations upon the public maps of Coney island, and that to follow the lines and location of plaintiff's property, as claimed by him, intersects and includes portions of several different lots on said map, and that it would not be possible to observe the lines and bearings set up by plaintiff without casting the easterly lines of Coney island north of Sheepshead bay. In other words, to sustain the plaintiff's contention, it must be held that all the public maps and locations of other property on that part of the island are wrong, and that the east end of the island itself has been transferred to the mainland. By following the lines of plaintiff's lot, the lines of all the other owners of this valuable property are thrown into inextricable confusion. It is true the judge has found that the locality of the premises mentioned in the complaint which were conveyed to the plaintiff's predecessors by the commissioners in partition is definitely established, but it is evident this finding is based upon what the judge supposed was the finding of the general term upon the proofs previously before that court. The only question in the case was as to location of lot 23. The plaintiff's evidence to establish that fact was entirely overthrown by the defendant's evidence upon that question. It was shown that this part of the island was covered with ditches in all directions, and that it was invaded by the ocean, and the whole surface frequently changed. The nature of the soil was such that there could be no permanent land-mark, and there were no improvements from which a reliable stand-point could be obtained at the time Bergen ran out the lines in the particular suit. It was only after improvements began to be made, and the land became valuable, that accurate surveys were made and permanent bounds established to mark the location of the various lots. Now, it appears that for years property has continually changed hands and vast improvements have been made, all based upon the public maps and surveys now on

file. All these surveys and lines are utterly inconsistent with the location of the plaintiff's lot as established by that judgment. In fact, if his location is right, the judge has found that the east end of Coney island is on the main-land at Sheepshead bay. The ditches and roads upon this part of the island are shown to be changeable, and unworthy of any reliance upon which to base a disputed boundary line. The evidence of the plaintiff was insufficient, if the cross-examination of the witness is taken into consideration, to establish the location. In the first place, as to the hearsay evidence of Mr. Bergen. He did not profess to know where the line of lot 23 was located. All he pretended to know was that he surveyed a lot where he was told do so. It is not the case of hearsay from a person in a situation to know that the declaration he was making was true. It was not the declaration of a person claiming title, or a person claiming to know the location of an ancient boundary, or of a general custom or reputation, and therefore, even if admissible, of which there is doubt, it was of a very low degree of proof, and easily rebutted. The vice of this ditch bound lies in the fact that a ditch could be found at various points along the road that existed when the chancery map was made, and any person could step off of the road, and go any distance upon the ditch, and start his lines. But it appears that all these ditches have been repeatedly changed. The road is no longer in existence, so that there is no permanent starting-point fixed from which any definite location can be made. As stated by a witness: "There is no durability to those things as monuments." The deed to Greenleaf was made in 1848, since which time no effort has been made to claim or locate this lot. In the meantime persons supposing they had acquired a good title to said lands have expended thousands of dollars upon the land on the faith of the public surveys. A title acquired under such circumstances, and where such momentous consequences are to follow its failure, should only be impeached by clear and convincing

proof, especially where such gross laches characterize the conduct of a claimant. The judgment should be reversed and a new trial ordered; costs to abide event.